CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 13 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **DEBORAH K. STOUT,** | ) | |
| | ) | **CIVIL ACTION NO.: 7:10CV00403** |
| **PETITIONER,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **V.** | ) | |
| | ) | **By: Samuel G. Wilson** |
| **WENDY HOBBS, WARDEN** | ) | **United States District Judge** |
| | ) | |
| **RESPONDENT.** | ) | |
| | ) | |
| | ) | |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by petitioner, Deborah K. Stout, challenging her conviction and sentence in the Circuit Court of Clarke County, Virginia for first degree murder, use of a firearm in the commission of that murder, conspiracy to commit murder, attempted malicious wounding, and conspiracy to commit that offense. Stout raises various ineffective assistance of counsel claims, and the matter is before the court on respondent's motion to dismiss. The court finds that two of Stout's ineffective assistance claims are unexhausted and defaulted and that the Supreme Court of Virginia has adjudicated Stout's remaining claims on the merits and that adjudication was not contrary to clearly established Federal law or based on an unreasonable determination of the facts. Accordingly, the court grants the respondent's motion to dismiss.

## I.

Evidence at Stout's jury trial, summarized by the Court of Appeals in the light most favorable to the Commonwealth, was as follows:

> [O]n July 12, 2004, [Stout], then forty-one years old, asked her twenty-three-year-old tenant, David Grizzel, with whom she had recently begun a sexual relationship that involved cocaine use, to kill Owens. Appellant and Owens were in an on-again, off-again romantic relationship. At her direction, Grizzel

previously had disabled the brakes on Owens' truck. Owens was not injured when his brakes failed.

Grizzel agreed to kill Owens, and that same afternoon he purchased a .32 caliber pistol with money given to him by appellant for that purpose. Immediately after Grizzel bought the gun, he showed it to appellant, who briefly held it.

Earl Warren, appellant's long-time friend and tenant, who had previously assisted Grizzel in disabling Owens' brakes, drove Grizzel to Owens' house that night so that Grizzel could kill him. Consistent with their plan to kill Owens, appellant preceded Grizzel and Warren to Owens' house, and was in the bedroom when Grizzel rang the front door bell. Owens answered the door, and Grizzel shot him with the recently purchased pistol and stabbed him multiple times with a knife. When they were certain Owens was dead, appellant told Grizzel to leave and that she would "take care of it from [t]here." Grizzel and Warren then left Owens' house and disposed of the gun and the knife, neither of which was recovered by police.

After Grizzel murdered Owens and departed with Warren, appellant left Owens' house and proceeded to a neighboring house, where Owens' neighbors called 911. A gunshot residue test performed later that night revealed a microscopic particle of gunshot residue on appellant's hand.

Appellant denied she was involved in disabling the brakes on Owens' truck or in his murder, but admitted being in Owens' home when Grizzel killed him. She testified that she heard gunfire, grabbed a puppy she had with her, went out the sliding glass door connecting Owens' bedroom to his back porch, jumped from the porch to the ground, some eleven feet below to a sharply inclined slope, holding her purse and the puppy, and then made her way through the woods to the neighbor's house.

After Owens' funeral, appellant, Grizzel and Warren traveled together to Florida. Some months later, Warren informed police that Grizzel disabled Owens' brakes and later murdered him, admitting that he drove Grizzel to the scene on each occasion. Prior to appellant's trial, Grizzel pled guilty to the attempted murder of Owens by disabling the brakes on his truck, and to his first-degree murder. Both Grizzel and Warren testified for the Commonwealth at appellant's trial.

Stout v. Commonwealth, Record No. 1652-06-4 (January 29, 2008).

2

The jury found Stout guilty on all offenses, and the Circuit Court sentenced her to life plus three years for murder and the use of a firearm in the commission of that offense and imposed concurrent sentences for the other offenses. Stout appealed her conviction to the Court of Appeals of Virginia, that court affirmed, and the Supreme Court of Virginia refused her petition for appeal. Stout then filed a petition for writ of habeas corpus in the Supreme Court of Virginia raising various ineffective assistance claims, as well as a claim challenging the propriety of her sentence. The Supreme Court of Virginia referred to the Circuit Court for an evidentiary hearing on two of the issues raised by Stout's habeas petition. After an evidentiary hearing as to those issues, the Circuit Court filed an opinion setting forth its findings of fact and conclusions of law recommending that the Supreme Court of Virginia deny the petition as to those claims. The Supreme Court, in turn, entered in opinion finding that none of Stout's ineffective assistance claims satisfied either the performance or prejudice prong of Strickland v. Washington, 466 U.S. 668, 687 (1984) and that her claim challenging her sentence was barred from habeas review because it could have been raised at trial and on direct appeal. Consequently, it dismissed her petition. Stout then filed her current habeas petition in this court, and respondent has moved to dismiss.

## II.

According to Stout's first claim, Stout's counsel were ineffective in failing to move for a mistrial or ask for a cautionary instruction after the Commonwealth's Attorney referred to prejudicial evidence the trial court had excluded. Stout claims that the Commonwealth's attorney referred to excluded evidence during opening statement and at various times at trial, including a bench conference she alleges the jury overheard, of her plot to kill her former husband. The Supreme Court of Virginia referred that and one other issue to the Circuit Court

3

for an evidentiary hearing. After the hearing, the Circuit Court found that the Commonwealth's Attorney had not violated the trial court's ruling that excluded the evidence and that there was no credible evidence that the jury had overheard the bench conference. Based upon those findings, the Supreme Court of Virginia found that Stout had failed to demonstrate either deficient performance or prejudice. That adjudication is not based on unreasonable determination of the facts, and the court dismisses the claim.

Before trial, the trial court heard the defense's motion to exclude evidence that Stout also had plotted to kill her ex-husband, Barry Heavener. The Commonwealth claimed to have evidence that Stout had plotted with Earl Warren and David Grizzel to lure her ex-husband to a remote location and kill him. The trial court ruled that the Commonwealth could not, in its case in chief, put on "anything about the Heavener alleged plot." (Trial Tr. vol. 2, p. 72, June 25, 2007.) In opening statement, the Commonwealth's Attorney spoke about Stout's complaints about Stout's ex-husband and Owens and about Stout's wishes that they could "just do away with" both of them. Stout's counsel objected, and the court held a bench conference. During that conference, the trial court admonished the Commonwealth's Attorney to keep her voice down. The Commonwealth's Attorney stated in a whisper that she was "not going to talk about the plot to kill Barry Heavener," a statement Stout now alleges the jury overheard. The trial court overruled Stout's objection to the Commonwealth's Attorney's opening statement and permitted the Commonwealth's Attorney to proceed with her argument.

Following its evidentiary hearing on Stout's habeas petition, the Circuit Court found that "the brief statement in the bench conference about the 'plot to kill Barry Heavener' was a fleeting comment made during a whispered bench conference and after the Commonwealth's Attorney lowered her voice pursuant to the judge's admonition." The habeas court concluded

4

that the Commonwealth's Attorney was twenty-three feet from the closest juror and there was no credible evidence that the comment was heard by any member of the jury. The Commonwealth's Attorney mentioned Barry Heavener's name at least seven more times during the course of trial. The Circuit Court found that these references did not violate the trial court's pretrial order, noting that when trial counsel objected, the trial court overruled his objection. Therefore, it concluded that a motion for mistrial or a curative instruction would have been futile. It found no basis to conclude that defense counsel had performed deficiently in not moving for a mistrial or requesting a jury instruction or that Stout was prejudiced by counsel's performance.[1] The Supreme Court of Virginia, armed as it was with the Circuit Court's findings of fact, agreed.

Stout's federal habeas petition is governed by 28 U.S.C. § 2254 and Chapter 154 of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, 28 U.S.C. §§ 2261–66 ("AEDPA"). This "federal habeas scheme leaves primary responsibility with the state courts." Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011) (citing Woodford v. Visciotti, 537 U.S. 19, 27 (2002) (*per curiam*)). Consequently, in almost all circumstances, petitioners under § 2254 must exhaust all available state court remedies before seeking relief in federal court, 28 U.S.C. § 2254(b), and when a state court has adjudicated a petitioner's habeas claims on the merits, Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000), the AEDPA requires the federal court to defer to the state court's decision:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

---

[1] The trial court noted that it would occasionally conduct bench conferences. It noted that the court and counsel would whisper during those conferences because the jury was not supposed to hear what they were saying. The court instructed the jury that it was to consider only "testimony from witnesses, any exhibits admitted in evidence, any fact agreed upon between the parties and presented to [the jury] in the form of a stipulation." (Trial Tr. vol. 2, p. 261 June 25, 2007.)

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The state court's factual determinations are also "presumed to be correct," and the petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these statutory standards, a state court's adjudication is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than the [Supreme Court of the United States] has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000). A state court's decision unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts." Id. at 413. It is insufficient that a state court applied federal law incorrectly; a federal habeas court may grant relief only if it determines that the state court unreasonably applied federal law. Id. at 411. In making that determination, "a habeas court must determine what arguments or theories *could have supported* the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington v. Richter, 131 S. Ct. 770, 776 (2011) (emphasis added). Section 2254(d)

6

review, therefore, is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

To demonstrate ineffective assistance of counsel, Stout must show that her counsel's performance was deficient and that the deficiency prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687–91 (1984). To establish deficient performance, Stout must first demonstrate that counsels' representation "fell below an objective standard of reasonableness," and there is a strong presumption that counsel acted reasonably. Id. at 688–89. To establish prejudice to her defense, Stout must demonstrate that but for her attorneys' errors, there is a reasonable probability that the outcome of the trial would have been different. Id. at 694. A reasonable probability is a "substantial" probability not just a "conceivable" likelihood of a different result. Harrington, 131 S. Ct. at 791.

When evaluating claims of ineffective assistance of counsel, a federal habeas court may grant relief only if the state-court decision unreasonably applied the more general standard for ineffective assistance of counsel claims established by Strickland. "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009). Therefore, the review of a Strickland claim under § 2254(d) is "doubly deferential." Id. at 1413.

With these precepts in mind, Stout's claim that she is entitled to federal habeas relief because her counsel failed to move for a mistrial or a curative instruction is a non-starter. The Supreme Court of Virginia correctly cited controlling precedent—Strickland—and applied it in a reasonable manner to facts it reasonably determined. In fact, in her opening statement and in her questioning of witnesses, the Commonwealth's Attorney did not mention the plot or details of the plot to kill Stout's ex-husband, only Stout's wishes to have both Owens and her ex-husband

7

killed. Consequently, the trial court found no violation of its pretrial order. The trial judge also admonished the Commonwealth's Attorney to lower her voice during the bench conference and was uniquely positioned to assess whether she had adequately complied to prevent the jury from hearing about that plot. Likewise, following the evidentiary hearing on the habeas issues referred by the Supreme Court of Virginia, the Circuit Court found no credible evidence of a likelihood that the jury overheard the passing whispered reference to the plot. It follows that under the circumstances, the Supreme Court of Virginia's decision was in no respect an unreasonable adjudication of the claim, and the court dismisses it.

### III.

According to Stout's second claim, Stout's counsel were ineffective in failing to move for a change of venue based upon pretrial publicity. Like the first issue, on state habeas the Supreme Court of Virginia referred this issue to the Circuit Court for an evidentiary hearing. After the hearing, the Circuit Court found essentially that there was no basis for a motion to change venue and the trial court likely would not have granted the motion if it had been made. Accordingly, the Circuit Court found that counsel were not ineffective in failing to move for a change of venue. Based upon the Circuit Court's findings, the Supreme Court of Virginia found that Stout had failed to demonstrate either deficient performance or prejudice. That adjudication is not based on unreasonable determination of the facts or an unreasonable application of federal law as determined by the Supreme Court of the United States, and the court dismisses the claim.

In considering the issue on habeas review, the Circuit Court noted that before jury selection, defense counsel stated that he had not made a motion for change of venue because he thought the trial court would wait to see if it could impanel a jury and that the trial judge had responded that was in fact his thinking. The Circuit Court found that this approach had "long

8

been the practice" in its circuit, and that no change of venue motion had been granted there since 1975. The Circuit Court reviewed the extent and nature of pretrial publicity in the community and the *voir dire* at trial, noted from the panel's responses that only a third had been exposed to pretrial media coverage and that the trial court had been able to seat a jury with relative ease, and found the ineffective assistance claim "transparently without merit."[2] It found that "since there were no actual grounds for granting a motion for a change of venue, counsel [could not] be ineffective for failing to make that motion." The Supreme Court of Virginia adopted the Circuit Court's findings and concluded that Stout had failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that but for counsel's alleged errors the resulting proceeding would have been different.

This court finds the Supreme Court of Virginia's adjudication of the claim to be in no way unreasonable. It correctly cited controlling precedent and applied it in a reasonable manner to facts it reasonably determined. To show ineffective assistance for failing to move for a change of venue a petitioner must show, at a minimum, that "there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [petitioner's] counsel had presented such a motion to the court." See Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000). Here, the likelihood that the trial court would have granted a motion for change of venue seems especially remote. Therefore, viewed through the AEDPA's deferential lens, the Supreme Court of Virginia's decision is unassailable.[3] Accordingly, this court dismisses the claim that counsel were ineffective in failing to move for a change of venue.

---

[2] Trial counsel filed an affidavit in the state habeas proceeding that, upon reflection he would have done certain things differently. The Circuit Court correctly stated that the appropriate test is not whether on reflection he would have done things differently but rather "what an objectively reasonable attorney would have done under the circumstances."

[3] This court also notes from reviewing the transcript of *voir dire* that the trial judge was actively engaged in the selection process and liberally struck jurors for cause. He made explicit findings that jurors were suitable, and

## IV.

Stout's third claim alleges that her counsel rendered ineffective assistance in failing to interview and call various witnesses. The Supreme Court of Virginia denied the claim because Stout failed to demonstrate either deficient performance or prejudice. The record reveals that Stout's counsel, in fact, interviewed all but three of the witnesses Stout identified, and nothing in Stout's submissions in support of her state habeas petition demonstrates that trial counsel performed deficiently in not interviewing those witnesses or prejudiced her defense by not calling them. Consequently, the Supreme Court of Virginia's adjudication of the claim was not contrary to clearly established federal law or based on an unreasonable determination of the facts, and the court dismisses it.[4]

---

when he did not, it is implicit that he had found them acceptable—that is, capable of deciding the case based on the law and the evidence, disregarding extraneous influences. The Supreme Court has made clear that:

> a trial judge's finding that a particular venireman was not biased and therefore was properly seated was a finding of fact subject to §2254(d). [That Court has] noted that the question whether a venireman is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the venireman's state of mind. [It has] also noted that such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province. Such determinations [are] entitled to deference even on direct review; "[t]he respect paid such findings in a habeas proceeding certainly should be no less."

Wainwright v. Witt, 469 U.S. 412, 428 (1985) (citing Patton v. Yount, 467 U.S. 1025, 1038 (1984)).

[4] At trial, Stout denied all involvement with the conspiracy. The prosecution, however, presented testimonial evidence that while Stout, Grizzel, and Warren were living as roommates, Stout and Grizzel grew close and started using cocaine together. Around this time, Stout allegedly began pressuring Grizzel to kill her ex-husband, Barry Heavener. Evidence of this plot was excluded from trial. Further testimony revealed that Stout began complaining to her roommates about Owens' mean streak and his promiscuity, and the three roommates soon hatched a failed scheme to kill Owens by cutting the brake lines on his truck. Warren testified for the prosecution that Stout and Grizzel became closer and "wrestled around" in public after the plot. And Grizzel testified that at this time he and Stout began having sex one to four times a day. (Stout admitted to having sex with Grizzel only once—while vacationing in Florida with Grizzel and Warren shortly after the murder.)

Soon after the failed plot, Stout and Grizzel hatched another plan. They purchased a pistol from a local teenager named Sam Sine, a fact to which Sine testified. On the day of the murder, the pair went in search of Warren to drive Grizzel to and from the murder. Stout denied this point, but one of Warren's coworkers, Gerald Ludwick, testified that Stout came looking for Warren at his place of work that day. According to Warren, Grizzel and Stout found him and he met with them that afternoon. Telephone records establish that calls were placed from Stout's cell phone to another cell phone—which Warren identified as his—at 5:33pm and 5:38pm on the day of the murder, and records for Warren's cell phone establish that a call was placed from his phone to Stout's at 5:41pm on the same day. Stout denied any recollection of talking to Warren on the phone that day. After work, Warren drove Grizzel to Owens' house. On the way, Grizzel used Warren's phone to call Stout at Owens' house to ensure that no one else was there. Stout claimed that such a call was impossible because her phone did not get reception at Owens'

Contextually, Stout's allegation that her counsel failed to call witnesses they had interviewed raises no constitutional concern. Counsel aggressively cross-examined the Commonwealth's witnesses and called ten witnesses of their own in pursuit of a cohesive theory of defense that Warren and Grizzel acted independently of Stout based on their own motivations and purposes. The decision to call some witnesses and not others is an essential part of effective representation. Here, it demonstrates that counsel were making strategic choices, not that they failed to make those choices. "Decisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Williams v. Armentrout, 912 F.2d 924, 934 (8th Cir. 1990) (en banc) (quoting Frank v. Brookhart, 877 F.2d 671, 674 (8th Cir. 1989)); see also Blanco v. Singletary, 943 F.2d 1377, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call as an aspect of trial tactics that is normally entrusted to counsel."). Under the doubly deferential lens for reviewing the claim that her counsel should have called those witnesses, this court concludes that the Supreme Court of Virginia did not unreasonably apply Strickland to the allegations before it. The same is also true of the three witnesses Stout's counsel did not interview.

The first of these un-interviewed witnesses was Mary Hawkensmith, one of Stout's neighbors. Stout points to a statement Hawkensmith gave to an investigating officer concerning certain details she observed on the day of the murder regarding Stout's and Grizzel's departure from Stout's home. As Stout notes in her state habeas petition, Hawkensmith's observations

---

house. Despite Stout's claim, telephone records established that a call was successfully placed from Warren's phone to Stout's phone at 7:03pm. Soon after calling Stout, Grizzel arrived at Owens' front door, rang the doorbell with a small rock to avoid leaving fingerprints, and shot Owens.

On the night of the murder, police found a seemingly panicked Stout at her neighbor's house. When the police interviewed Stout, they asked her whether she lived with anyone. She told them about Warren, but neglected to mention Grizzel (she later claimed it was because she "didn't think it was important"). Police did not learn of Grizzel's existence until nearly a month later, during an interview with Stout's sister. Grizzel was soon charged with the murder. Two days into Grizzel's trial, without any promises from the Commonwealth, he pled guilty to the charges and implicated Stout.

were in the "preliminary investigative report" provided in discovery. Under the circumstances, the Supreme Court of Virginia was free to presume that counsel knew of the interview, did not find it especially helpful, and chose to direct their energies elsewhere.

The second witness, William Russell Carol, knew Stout from a bar that she frequented. During the investigation, the prosecution received a note from Carol and turned it over in discovery. In light of the evidence contained in that note, it is likely that Stout would be complaining if her counsel *had* called Carol as a witness. According to the note, Owens had a cocaine habit and was attempting to make a "heavy weight" cocaine purchase six weeks before his death. He suggested that the police should use drug dogs in Stout's and Owens' homes and that, after Owens' death, Stout and Warren would show up at the local bar with cocaine and were no longer attempting to buy it as they had before. The note concludes by mentioning that Carol had heard Stout say that she "did not want to be caught" and that he was unsure whether she was referring to drugs or murder.

The third un-interviewed witness was Carolyn Snyder. Stout urges that Snyder was "aware of the relationship" between Owens and Stout and that she knew of Owens' plans to settle down with Stout.[5] Each of these details, however, emerged at trial.

There is simply no showing of deficient performance in this case, nor is there any showing by Stout that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [the trial] would have been different." Strickland, 466 U.S. at 694. The only reasonable probability here is that Stout's counsel would have spent time interviewing witnesses whose testimony would be largely duplicative, or possibly inadmissible or damaging. Once again, viewed through the AEDPA's deferential lens, the Supreme Court of Virginia's decision

---

[5] Stout also claims that Snyder knew of the gunpowder stored in her basement by her nephew. See infra Part VI regarding Stout's alternate theories of the source of the gunpowder residue found on her hands.

that Stout had failed to demonstrate deficient performance or prejudice in not calling these various witnesses at trial is unassailable. Accordingly, the court dismisses the claim.

**V.**

Stout's fourth claim alleges that she was denied effective assistance because counsel failed to seek out character witnesses to testify in her behalf at trial and sentencing. She claims she sent letters from her character witnesses to her counsel, and her counsel informed her that she was not allowed to present character witnesses. The Supreme Court of Virginia noted that Stout had proffered "character letters that appear[ed] to have been written after [her] trial and sentencing" and found that Stout had failed to demonstrate either deficient performance or prejudice. This court does not find that decision to be objectively unreasonable.

Stout's federal habeas petition lists her so-called character witnesses and the testimony they allegedly would give. The witnesses characterize Stout variously as "a fun loving person who is full of life," a person who is "willing to help others," a person who is "always helping out someone all of the time," a "sweet lady," a person who "doesn't even do any drugs," and so on. Most of these witnesses decry Stout's treatment at trial and make observations such as Stout "deserves a chance to appeal her case and prove what really happened," Stout "deserves a second chance because of the way the Commonwealth cornered her," and Stout "has on several occasions confessed her innocence . . . in the death of Frank Owens." (Fed. Pet., doc. no. 1, pp. 23–31.)

It is hard to imagine how the opinions and observations of these so-called character witnesses would have been admissible at trial or substantially helpful at sentencing. Even assuming its admissibility, character evidence carries a risk of opening an otherwise closed evidentiary door. At trial, once the defendant puts her good character in issue, "the

Commonwealth may question defendant's character witnesses with respect to 'specific instances of misconduct.'" See, e.g., Weimer v. Commonwealth, 5 Va. App. 47, 53 (1987). In the trial court, Stout's counsel had sought to exclude Stout's plot to kill her former husband, and it is hard to forecast how character evidence might have impacted the trial court's rulings at the guilt or innocence stage of trial. But whatever the risk might have been at trial, the admission of Stout's character evidence would have magnified the risk of an adverse ruling at sentencing:

> where a defendant puts on evidence that he has been of good character or has a "history and background" of being a good law-abiding, caring, or remorseful person, the Commonwealth may, subject to the trial court's sound discretion, introduce evidence of specific acts in the defendant's "history and background" which rebuts the defendant's contention or proves that the defendant has a history or background of criminal or bad acts or is not of good character.

Pugsley v. Commonwealth, 33 Va. App. 640, 647 (2000). Consequently, the Supreme Court of Virginia's decision that Stout had failed to show either deficient performance or prejudice did not result in an unreasonable adjudication of the claim, and the court dismisses it.[6]

## VI.

Stout's fifth claim alleges that her counsel rendered ineffective assistance in failing to challenge the procedures used to perform a gunshot residue test. Stout contends that the officer who administered the test did not wash his hands or put on gloves before the test and that this

---

[6] In the course of analyzing the claim, the Supreme Court of Virginia noted that "petitioner [had] failed to demonstrate that counsel's performance was deficient or that there [was] a reasonable probability that, but for counsel's alleged errors, she would have pleaded not guilty, would have proceeded to trial, and the result of the proceeding would have been different." In this limited respect, the Supreme Court of Virginia appears to have mistakenly applied a guilty-plea analysis. This court, however, is required to apply § 2254(d) to the claim and not "evaluate or rely upon the correctness of the State Court's process of reasoning." See Wright v. Moore, 278 F.3d 1245, 1291 (11th Cir. 2002). "Under § 2254, a habeas court must determine what arguments or theories supported or . . . could have supported [] the state court's decision . . . ." Harrington v. Richter, 131 S. Ct. 770, 776 (2011) (emphasis added). Therefore, this court's "review is in fact deferential because [it] cannot grant relief unless the state court's result is legally or factually unreasonable." Bell v. Jarvis, 236 F.3d 149, 163 (2000) (quoting Aycox v. Lytle, 196 F.3d, 1174, 1178 (10th Cir. 1999)).

failure resulted in a false positive.[7]  According to Stout, counsel should have challenged the administration of the test and examined the administering officer and the gunshot-residue expert regarding proper procedures for the test.  The Virginia Supreme Court denied this claim on the ground that Stout's theory at trial was not that the test was contaminated because police mishandled it, but rather that the false positive was a result of Stout anxiously grasping a police officer's hand in the aftermath of the murder.  (See, e.g., Trial Tr. vol.4, p. 1451–52, June 25, 2007.)  That adjudication is not based on an unreasonable determination of the facts or an unreasonable application of federal law, and the claim is dismissed.

Strickland requires both deficient performance and prejudice to the defendant.  In this case, Stout suffered neither.  Defense counsel approached this issue from multiple angles; even before confronting the matter in the courtroom, counsel filed a motion to suppress the evidence on grounds that it was irrelevant and immaterial.[8]  (R. vol. 3, p. 242–45.)  The trial court denied that motion and the Court of Appeals affirmed.  At trial, Stout's counsel were thus faced with the task of explaining to a jury how gunshot residue was found on Stout's hands in spite of Stout's claim to have been far away from the shooting.  Stout's counsel settled on a perfectly plausible strategy: to show that Stout had, after the murder but before the administration of the test, anxiously grasped the hand of a female police officer who had very recently handled her service pistol.  This theory had the added benefit of being verifiable by the police officer herself.  Stout's counsel were indeed able to elicit testimony from Officer Patricia Putnam that she had pulled her

---

[7] In her petition, Stout puts forth yet another theory—that the source of the gunpowder residue was the gunpowder stored by her nephew in her basement.  Her claim of error, however, concerns the officer who administered the test, and the court will confine its analysis to that subject.

[8] The argument being that, since the Commonwealth did not intend to prove that Stout pulled the trigger or handled the gun or even that she came close to Grizzel after he pulled the trigger, that the presence of the residue had no tendency to prove conspiracy to murder.  The defense further argued that that evidence of the residue would confuse and mislead the jury.

firearm after arriving at the crime scene and that Stout subsequently held her hand for "most of" three hours. (Trial Tr. vol.4, p. 1379, June 25, 2007.) Stout's counsel also effectively elicited responses from Douglas DeGaetano, a forensic scientist called by the prosecution, which buttressed the defense's theory:

> Q. So when an officer draws their gun and they hold it for an extended period of time any primer residue [sic], that gun could be "dirty" so any primer residue on that gun could be transferred the [sic] officer hand. Correct?

> A. Yes. In that scenario that is correct.

> Q. And if that same officer then goes and holds the hands of another person that primer residue can be transferred to that other person?

> A. That is a possibility, yes.

(Trial Tr. vol.3, p. 1102, June 25, 2007.)

Stout's counsel also questioned DeGaetano extensively about the administration of the gunshot residue test. Degaetano produced a photograph of the test used by the Commonwealth and explained, step-by-step, how to properly administer the test. (Id. at 1096–97.) And finally, contrary to Stout's assertions, defense counsel asked DeGaetano whether officers are "supposed to wash their hands or sanitize their hands in any way before administering the GSR kit." Answer: "Yes, the instructions in the kit inform the collecting officer to wash his hands before performing this test. If soap and water isn't available there is a thing called a wet nap inside the gunshot residue kit so they can clean their hands with that before performing the test." (Id. at 1106.). DeGaetano then testified that *not* following those instructions could result in contamination and that he had no knowledge of whether those instructions had been followed. In short, Stout's counsel seized on a reasonable, verifiable theory and did a creditable job of establishing it.

16

In light of the above, it appears plain to this court, that the Supreme Court of Virginia did not unreasonably apply <u>Strickland</u> in rejecting Stout's claim that her counsel had failed to challenge the admission of gunshot residue evidence. Indeed the claim appears frivolous, and the court dismisses it.

## VII.

Stout's sixth claim alleges that she was denied effective assistance of counsel because counsel failed to properly investigate the crime and prepare for trial in various ways. The Supreme Court of Virginia found that Stout had failed to demonstrate either deficient performance or prejudice under <u>Strickland</u>. That adjudication is not based on an unreasonable determination of the facts or application of federal law, and the court dismisses the claim.

Stout alleges she was denied the effective assistance because her counsel failed to investigate cell phone reception at Owens' house. Stout's petition summarizes various testimony at trial and claims her cell phone records do not show that she, in fact, received the call from Warren's cell phone on the evening of the murder. However, her cell phone records show an entry and a representative of Sprint Telecommunications testified that there would not be an entry in the records if no connection was made. That evidence belies Stout's assertion. Stout has suggested nothing that her counsel should have adduced at trial that would have forcefully proved otherwise. In any event, there was extensive testimony of problematic cell phone reception at and nearby Owens' house. Stout testified that she was unable to make or receive calls on her cell phone while at Owens' house. The Supreme Court of Virginia noted that any further testimony concerning the lack of cell phone reception would have been merely cumulative and her attorneys were not deficient in failing to elicit it. The Supreme Court of Virginia did not unreasonably apply <u>Strickland</u> in rejecting the claim.

17

Stout alleges that her counsel rendered ineffective assistance in failing to measure the height of the deck from which she claims to have jumped after hearing the first gunshot. She claims the deck was as low as six-and-a-half feet from the ground, the pictures of the deck submitted into evidence by the prosecution were misleading, and the prosecution improperly added the height of the deck railing in their calculation of the height of the deck. The Supreme Court of Virginia found that the record clearly showed that the deck floor was eleven feet three inches from the ground at its lowest point. Stout provided the Supreme Court of Virginia with no evidence to the contrary. It follows that Supreme Court of Virginia's adjudication of the claim did not involve an unreasonable application of Strickland or result from an unreasonable determination of facts in light of the evidence presented in the state court proceeding.

Stout alleges she was denied the effective assistance because counsel failed to obtain video recordings of places, including a private residence and a private business, that the prosecution alleged she had been the day of the murder. Stout claimed she had been at none of the locations that day. The Supreme Court of Virginia noted that Stout failed to allege that "any of the specific locations mentioned had video surveillance equipment or that any videotapes of the day of the murder still existed." Consequently, it concluded that she had not demonstrated either deficient performance or prejudice. This court concludes that the Supreme Court of Virginia's adjudication did not involve an unreasonable application of Strickland.

Stout alleges she was denied the effective assistance because her counsel failed to present evidence as to why she was not in Owens' vehicle on the morning after the brakes were cut. She claims that although she had planned to ride along with him that morning to a job site, Owens' work plans changed. The Supreme Court of Virginia noted that Stout testified as to why she was not in Owens' vehicle on that particular morning and any additional evidence would have been

cumulative and that Stout had demonstrated neither deficient performance nor prejudice.

Nothing suggests that the Supreme Court of Virginia unreasonably applied Strickland, and the

court dismisses the claim.[9]

## VIII.

Stout's seventh claim alleges that her counsel rendered ineffective assistance in failing to

challenge the Circuit Court's sentencing order. Stout failed to raise the claim in her state habeas

petition, and the time for raising the issue has passed. See Virginia Code § 8.01-654(A)(2).

Therefore, the claim is simultaneously exhausted and defaulted in federal habeas, Bassett v.

Thompson, 915 F.2d 932, 937 (4th Cir. 1990), unless Stout shows either (1) cause and prejudice

or (2) a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749–50 (1991). To show

cause, Stout must demonstrate that there were "objective factors," external to her defense,

impeding her from raising her claim at an earlier stage. See Murray v. Carrier, 477 U.S. 478, 488

(1986). To show prejudice, she must show that the alleged constitutional violation worked to her

actual and substantial disadvantage, infecting her entire trial with error of a constitutional

magnitude. Id. at 488.

The "miscarriage of justice" exception is a narrow exception to the cause requirement.

A habeas petitioner falls within this narrow exception if she can demonstrate that a constitutional

violation has "probably resulted" in the conviction of one who is "actually innocent" of the

substantive offense. Id. at 496. Actual innocence means "factual innocence not mere legal

insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). To show actual innocence as

a gateway to her defaulted claim, Stout must establish that in light of new evidence, evidence not

presented at trial, "it is more likely than not that no reasonable juror would have convicted [her]"

---

[9] Stout's allegations are somewhat rambling and hard to follow. To the extent that she is raising additional claims under "Ground 6" in her current petition, the court finds that they were not fairly presented to the Supreme Court of Virginia and that she has defaulted them.

Case 7:10-cv-00403-SGW   Document 35   Filed 09/13/11   Page 19 of 21   Pageid#: 359

of the underlying offense. <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). In determining whether Stout has met this standard, this court, as a habeas court, "must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the 'rules of admissibility that would govern at trial.'" <u>House v. Bell</u>, 547 U.S. 518, 538, (2006) (quoting <u>Schlup</u>, 513 U.S. at 327–28). It must then make "a probabilistic determination about what reasonable, properly instructed jurors would do." <u>Schlup</u>, 513 U.S. at 329. "[B]ecause a <u>Schlup</u> claim involves evidence the trial jury did not have before it, the inquiry requires a federal court to assess how reasonable jurors would react to the overall, newly supplemented record." <u>House</u>, 547 U.S. at 519.

Here, Stout offers nothing as cause and prejudice to excuse her procedural default and suggests nothing that even remotely satisfies the miscarriage of justice exception's requirement that Stout produce new evidence of such a character that, had it been produced at trial, it is more likely than not that no reasonable juror would have convicted her of the underlying offenses. Accordingly, Stout has procedurally defaulted the claim that her counsel rendered ineffective assistance in failing to challenge the Circuit Court's sentencing order, and the court dismisses it.

## IX.

Stout's eighth claim alleges that her habeas counsel rendered ineffective assistance in her state habeas proceeding. Stout has not presented any claim to the Supreme Court of Virginia, and it is now exhausted and defaulted. More fundamentally, "the ineffectiveness or incompetence of counsel during federal or state collateral post-conviction proceedings [is not] a ground for relief in a proceeding arising under § 2254." 28 U.S.C. § 2254(i).

## X.

For the above-stated reasons, the court dismisses Stout's habeas petition.


**ENTER:** This September 13, 2011

UNITED STATES DISTRICT COURT JUDGE